UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSHUA D. FRANKLIN,

    Plaintiff,

v.                                              Case No. 3:22-cv-528-MMH-JBT

ROBERT W. NICHOLSON, et al.,

    Defendants.

## ORDER

### I. Status

Plaintiff Joshua D. Franklin, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on May 9, 2022, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[1] pursuant to 42 U.S.C. § 1983. Franklin proceeds on an amended complaint (AC; Doc. 15). In the AC, Franklin presents claims against the following Defendants: Sergeant Robert W. Nicholson, Sergeant Jackie Morgan, and Officer Christopher J. Adams.[2] He alleges that Defendants violated the Eighth Amendment when

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[2] On September 22, 2022, the Court dismissed without prejudice the claims against Defendants Ricky D. Dixon and Sergeant Dustin A. Bullard. See Order (Doc. 16).

they beat him and used chemical agents on December 14, 2021. Id. at 5. Franklin also asserts that Defendants falsified disciplinary reports of the incident in violation of his due process rights. Id. at 6. As relief, he seeks monetary damages. Id.

This matter is before the Court on Defendants' First Motion to Dismiss the Complaint (Motion; Doc. 26). In support of the Motion, Defendants have submitted exhibits. See Docs. 26-1 through 26-2. Franklin filed a response in opposition to the Motion. See Plaintiff's Response to Defendant's Motion to Dismiss (Response; Doc. 30). Thus, the Motion is ripe for review.

## II. Plaintiff's Allegations[3]

In the AC, Franklin asserts that on December 14, 2021, officers at Hamilton Correction Institution (Hamilton CI) conducted a "mass search" of the G-Dormitory. AC at 5. He alleges that during the search, Sergeant Nicholson, Sergeant Morgan, and Officer Adams called him into his cell, where they began to punch and kick him. Doc. 15-1 at 1. Franklin avers that Defendants wrestled him to the ground and placed him in hand restraints. Id.

---

[3] In considering Defendants' Motion, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to Franklin, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the AC, and may well differ from those that ultimately can be proved.

According to Franklin, after Sergeant Nicholson secured the restraints, he punched Franklin and sprayed a can of mace in Franklin's nose and mouth. Id. Officer Adams allegedly falsified the disciplinary report of the incident by stating he, not Sergeant Nicholson, used mace. Id. at 2. Franklin also asserts that Sergeant Morgan omitted Defendants' use of chemical agents from the report. Id. at 1. Franklin maintains he sustained psychological damages, extreme back pain, and increased anxiety and depression because of the assault. AC at 6.

### III. Summary of the Arguments

In their Motion, Defendants argue that the Court should dismiss the claims against them because: (1) Franklin failed to properly exhaust his administrative remedies; (2) he fails to state a due process claim upon which relief can be granted; (3) he cannot recover compensatory and punitive damages under 42 U.S.C. § 1997e(e) for his due process claim; and (4) the Eleventh Amendment entitles Defendants to immunity. Motion at 3-16. Franklin responds that the Court should not dismiss his claim because: (1) he exhausted his administrative remedies; (2) he states a plausible claim for relief; (3) he alleges sufficient physical injury to recover monetary damages;

and (4) Defendants are not entitled to Eleventh Amendment immunity. Response at 2-12.

## IV. Analysis

### A. Exhaustion of Administrative Remedies

### 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[4] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). A prisoner such as Franklin, however, is not required to plead

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[5] 286 F.3d, at 1024 (emphasis in original).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's

---

[5] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

5

exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Franklin] has failed to exhaust his available administrative remedies." Id. at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's

6

> view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020). Here, Defendants submitted declarations and grievance records as exhibits to their Motion. See Docs. 26-1 through 26-2. When neither party requests an evidentiary hearing, courts may decide a motion to dismiss on the basis of affidavits and other documents. Bryant, 530 F.3d at 1377 n.16. Here, the parties do not request an evidentiary hearing. Thus, the Court considers the grievance records solely for purposes of addressing the parties' competing contentions regarding exhaustion. In evaluating whether Franklin has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

## 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin.

Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or

9

complaint;" is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to;" is "not written legibly and cannot be clearly understood;" is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable;" or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### 3. Franklin's Exhaustion Efforts

With their Motion, Defendants provide declarations and records regarding Franklin's exhaustion efforts. See Doc. 26-1 through 26-2. In her declaration, Amanda Rewis, a correctional services assistant administrator for the FDOC, avers that Franklin submitted only two informal grievances between December 14, 2021, and May 12, 2022, based on her review of "the available grievance records stored int the FDC's Central database and that of Florida State Prison . . . ." Doc. 26-1 at 2-3. She states that Franklin submitted one informal grievance to Hamilton CI that it returned for failure to comply with Administrative Rule 33-103.014. Id. at 3. According to Rewis, Franklin submitted a second informal grievance to Florida State Prison (FSP) that it denied. Id. Rewis maintains that Franklin "filed no formal grievances or

appeals regarding alleged abuse." Id.

Defendants also submitted the declaration of Lawanda Sanders, an operation analyst for the FDOC Bureau of Inmate Grievance Appeals. Doc. 26-2 at 2. She avers that, according to her review of the available records in the FDOC's central database and from FSP, Franklin filed one direct grievance to the Office of the FDOC Secretary between December 14, 2021, and May 31, 2022. Id. at 2-3. The grievance was returned "as not in compliance with Chapter 33-103." Id. at 3.

Defendants attach as an exhibit the direct grievance (#22-6-14227) that Franklin submitted on May 9, 2022:

> I am filing this grievance on an incident that took place December 14, 2021 at Hamilton CI . . . Sergeants Nicholson, Jackie Morgan, Dustin Bullard, and Officer C. Adams who all committed excessive force by staff, cruel and unusual punishment, and violation of due process in falsifying court documents as the camera[']s audio and video in G-Dormitory and H-Dormitory during the time of the incidents show that the statement of facts written by these officials were not true, and witnesses[,] including staff[,] can testify to the excessive force by staff on December 14, 2021. On the morning of December 14, 2021[,] while conducting a mass search of G1[,] I was in compliance with the orders to strip down to my boxers when Sgt. Nicholson, Jackie Morgan, and Officer Adams called me back into my room and began spraying me, wrestling me (with cameras being unable to see) and punching me with closed fists while trying to break my neck. I was

11

> escorted to H-Dorm and placed on strip in cell H1122 when later that night in retaliation[,] Sgt. Bullard came to my door[,] opened my flap[,] and used chemical agents without following the procedures in Ch. 33-601 regarding use of chemical agents. His statement of facts on the DR also can be contradicted by the audio/video surveillance in H1. I am suing these Defendants under a § 1983 asking for the injunctive relief of reversal of all decisions including CM1 approval and transport/transfer to general population in Region One, or for $50,000 damages awarded or a jury trial as the incident is recorded on Vine.com, Skype.com/gov, and WebPACER as I am an inmate recently returned from Leon County Jail with programmed DNA that allows me to be watched by state officials whom viewed the entire incident. I'm asking for the remedy of reversal and quashing of all decisions only which would do away with the entire case in the federal courts. Otherwise[,] this grievance will count as a Notice of Intent to Sue and Exhaustion of Administrative Remedies according to 11th Circuit Court rules. I did not file a grievance out of fear of reprisal at Hamilton CI. Remedy Requested: Reversal of CM1 approval and transfer to GP in Region One (out of this region).

Id. at 5. On May 18, 2022, the Office of the FDOC Secretary responded:

> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your grievance at the appropriate level at the institution. You have not done so, or you have not provided this office with a copy of that grievance, nor have you provided a valid or acceptable reason for not following the rules.

12

>Upon receipt of this report, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.
>
>Based on the foregoing information, your grievance is returned without action.

Id. at 4.

### 4. Turner Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Response and accept as true Franklin's allegations. See Whatley, 802 F.3d at 1209. If Franklin's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. See id.

The Court now turns to the allegations in the Motion and Response concerning Franklin's exhaustion efforts. Defendants assert that Franklin failed to file informal or formal grievances at the institutional level regarding the December 14th assault. Motion at 8. Instead, he filed a direct grievance with the Office of the FDOC Secretary that it returned without action for failure to comply with procedural requirements. Id. Therefore, they contend that Franklin did not properly exhaust administrative remedies because he did not comply with the FDOC's grievance procedure. See id. at 8-9.

13

Franklin responds that he filed "a formal grievance #22-6-14227 which was returned without action." Response at 3. He subsequently filed an appeal to the Office of the FDOC Secretary "in institution mailing log number #22052050908 . . . which was also denied." Id. According to Franklin, he properly exhausted administrative remedies because he timely presented the issues to the FDOC before commencing suit. Id. at 6. Accepting Franklin's view of the facts as true, the Court cannot dismiss the AC at the first step of the Turner analysis.

### 5. Turner Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court next turns to the second prong of the Turner analysis. Franklin asserts that he filed a formal grievance and appealed the result of the formal grievance to the Office of the FDOC Secretary. Response at 3. He cites the mailing log number of the appeal and the number of the formal grievance. Id. at 3, 6. It appears that Franklin has misapprehended the grievance process. He refers to his "formal grievance #22-6-14277 which was returned without action." Id. at 6. Yet, the record demonstrates the direct grievance that the Office of the FDOC Secretary returned without action has a log number identical to the number of the "formal grievance" that Franklin

14

alleges he filed. Docs. 26-1 at 4; 26-2 at 4-5. Similarly, Franklin contends he filed an appeal of the formal grievance "in institution mailing log number #22052050908." Response at 3. However, Franklin's direct grievance includes the same institutional mailing log number. Doc. 26-2 at 5. As such, the Court finds Franklin's Response refers to the direct grievance and response attached to the Defendants' Motion.

Based on the record, Franklin failed to properly exhaust his administrative remedies because he did not comply with the FDOC's grievance procedure. While he submitted a direct grievance about the assault, the Office of the FDOC Secretary returned it without action because he did not include his formal grievance as required nor did he provide a valid reason for bypassing previous levels of review. Doc. 26-2 at 4; see Fla. Admin. Code R. 33-103.014(1)(f)-(g). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. Therefore, Franklin did not properly exhaust his administrative remedies because his grievance about the incident failed to comply with FDOC procedural requirements.

Even assuming the informal grievances filed at Hamilton CI and FSP concerned the assault,[6] Franklin still would not have properly exhausted his administrative remedies because he did not file a formal grievance or appeal. Doc. 26-1 at 3. In failing to do so, he did not complete the requisite steps to exhaust as determined by state law. See Dimanche, 783 F.3d at 1211 (recognizing that the FDOC uses a three-step process for inmate grievances that includes an informal grievance, formal grievance, and appeal).

In addition, Franklin argues that since the filing of the direct grievance on May 9, 2022, he has filed additional grievances regarding the incident. Response at 6. However, "an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Franklin filed his Complaint on May 9, 2022. Complaint at 1; see Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993) (applying the mailbox rule to a pro se prisoner's § 1983 complaint). Accordingly, any grievances filed after that date are not pertinent to the Court's determination of whether Franklin satisfied the PLRA's exhaustion

---

[6] Neither the Defendants' Motion nor their exhibits clarify whether Franklin filed the informal grievances about the assault. See generally Motion; Docs. 26-1 through 26-2.

16

requirement. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."). As such, Defendants' Motion to Dismiss is due to be granted based upon the contention that Franklin failed to exhaust administrative remedies.

### B. Defendants' Remaining Arguments

Because Franklin's claims against Defendants are due to be dismissed for failure to satisfy the PLRA's exhaustion requirement, the Court need not address Defendants' arguments that Franklin fails to state a due process claim upon which relief can be granted, he cannot recover monetary damages under 42 U.S.C. § 1997e(e) for his due process claim, and the Eleventh Amendment entitles Defendants to immunity. Therefore, as to these issues, the Motion is due to be denied without prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendants Robert W. Nicholson, Jackie Morgan, and Christopher J. Adams' Motion to Dismiss (Doc. 26) is **GRANTED** to the extent Defendants

seek dismissal for Franklin's failure to exhaust his administrative remedies. In all other respects, the Motion is denied without prejudice.

2. Plaintiff Joshua D. Franklin's Amended Complaint (Doc. 15) is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of July, 2023.

*[Signature]*
MARCIA MORALES HOWARD
United States District Judge

Jax-9 6/20
c:   Joshua D. Franklin, #Q22579
     Counsel of record